Andrew E. BLANCHE, Jr. and Cynthia D. Blanche, Appellants,

v.

FIRST NATIONWIDE MORTGAGE CORPORATION, Appellee.

No. 05–00–01327–CV.

Court of Appeals of Texas, Dallas.

March 14, 2002.

Cynthia D. Blanche, Bristow, VA, for appellants.

Marcus Daniel Guerra, Drenner & Stuart, L.L.P., Roy Kemp Kasling, The Law Offices of R. Kemp Kasling, P.C., Austin, for appellee.

Before Justices LAGARDE, MORRIS, and JAMES.

## OPINION

JOSEPH B. MORRIS, Justice.

This is a summary judgment case. In the court below, Andrew and Cynthia Blanche sued First Nationwide Mortgage Corporation alleging various causes of action, generally contending the company wrongfully reported them as delinquent on their mortgage payments and thereby ruined their credit history. The Blanches appeal the judgment granted in favor of First Nationwide, arguing first that the company's motion for summary judgment was void because it was not signed by the attorney in charge. The Blanches further argue the motion was untimely because it was filed before they had adequate time for discovery. Finally, the Blanches present evidentiary issues, both procedural and substantive, contending their summary judgment evidence created at least a fact issue about each of their causes of action. After reviewing the record, we conclude the trial court correctly granted summary judgment on all the Blanches' claims except one. Accordingly, we affirm the trial court's judgment in part and reverse it in part.

## I.

In May 1990, the Blanches purchased a house from William and Peggy Hewitt. As part of the purchase, according to First Nationwide, the Blanches assumed payment of the promissory note owed for the property.[1] Approximately one year later, the United States assessed a tax liability against the Hewitts, and the Hewitts failed to pay. To recover on the debt, the United States asserted a lien against the property the Hewitts had sold to the Blanches and, in 1995, filed suit in federal district court to foreclose on the tax lien. Both the Hewitts and the Blanches were named as parties in the suit.

On February 28, 1997, the federal district court issued an opinion stating the transfer of the property from the Hewitts to the Blanches was invalid and the property could be used to satisfy the Hewitt's tax liability. The Blanches attempted to stay enforcement of the federal court's judgment, but the court denied their motion and held that any further payments on the note by the Blanches would be voluntary. After receiving the district court's ruling, the Blanches stopped making payments on the note.

Although the federal district court no longer considered the Blanches to be the owners of the property, First Nationwide did. After the Blanches stopped making payments, First Nationwide reported to credit bureaus that the Blanches were delinquent in their mortgage payments. First Nationwide continued reporting

---

1. The summary judgment record does not contain a promissory note signed by the Blanches.

them as delinquent even after the Blanches made the company aware of the federal court rulings. First Nationwide eventually foreclosed its lien on the property and named the Blanches as the owners of the property in the foreclosure notice.

According to the Blanches, First Nationwide's actions resulted in several instances where they were denied credit or given unfavorable credit terms. In addition, Andrew Blanche asserted he was interrogated by his employer because his credit report did not substantiate a statement he made under oath that he was current on all his debts. The Blanches filed suit against First Nationwide in 1999 alleging claims for negligence, unreasonable collection efforts, violations of the Texas Debt Collection Practices Act, violations of the Federal Fair Debt Collection Practices Act, conversion, invasion of privacy, emotional distress, and defamation. In response, First Nationwide filed a combined no-evidence and traditional motion for summary judgment on all of the Blanches' claims. The trial court granted the motion without specifying the grounds. This appeal ensued.

## II.

■■■ Before we address the merits of First Nationwide's motion for summary judgment, we must resolve several procedural issues. First, the Blanches assert the motion was not properly before the trial court because it was not signed by the "attorney in charge." First Nationwide's original answer was filed by a law firm with two of its lawyers listed as the attorneys for the defendant. The second named lawyer signed the pleading, making him the "attorney in charge" pursuant to rule 8 of the Texas Rules of Civil Procedure. *See* Tex.R. Civ. P. 8. First Nationwide's motion for summary judgment, however, was signed by the first named

lawyer, who by then had opened his own practice and taken the case with him. First Nationwide did not provide any notice to the Blanches regarding the substitution of counsel before filing the motion. The Blanches contend that because there was no formal substitution of counsel as provided for in rule 10 of the Texas Rules of Civil Procedure, the motion was void when filed.

Rule 10 states that "[i]f the attorney in charge withdraws and another attorney remains or becomes substituted, another attorney in charge must be designated of record with notice to all other parties in accordance with Rule 21a." Tex.R. Civ. P. 10. Nothing in the rule states or even suggests that a motion filed by another attorney is void unless the rule's requirements are met. Moreover, with respect to their contention that counsel was substituted without notice, the Blanches make no showing that they were prejudicially disadvantaged by the failure to follow formal substitution procedures. They argue simply that the substitution of counsel was "detrimental" to them because they sent correspondence to First Nationwide's initial attorney of record. They do not show, however, that anything they sent did not reach First Nationwide and its new lead attorney or that they failed to receive any correspondence, filings, or notices because of the substitution. Even if they had, such a showing would not compel the conclusion that the motion was void when filed. The Blanches first argument is not well taken.

■■■ The Blanches also contend First Nationwide's motion for a no-evidence summary judgment was untimely because it was filed before an adequate time for discovery had passed. Yet, the Blanches filed neither a motion for continuance nor an affidavit explaining the need for further discovery with the trial court before the summary judgment hearing. Accordingly,

the Blanches have waived any argument that the motion was premature. *See Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex.1996); *McClure v. Attebury*, 20 S.W.3d 722, 729 (Tex.App.-Amarillo 1999, no pet.).

■■■■ The final matter of procedure we must determine is what evidence was properly before the trial court. First Nationwide contends the vast majority of evidence submitted by the Blanches in response to the summary judgment motion was inadmissible because it was not properly authenticated. Indeed, of the nearly three hundred pages of documents submitted by the Blanches, including purported loan documents, correspondence, and court records, there is only a single affidavit, which was signed by Andrew Blanche. Although the affidavit references two attached documents, the affidavit makes no attempt whatever to authenticate these documents, nor does it attempt to authenticate any of the other documents submitted by the Blanches as summary judgment proof.

The Blanches respond that First Nationwide waived its authentication objection by failing to obtain a written order from the trial court sustaining or overruling the objection. The Blanches further argue the documents in question were self-authenticating because they were produced during discovery. In the alternative, the Blanches contend that if their summary judgment evidence is defective, the trial court erred in not granting them a continuance to cure the problem.

■■■■ In support of their argument that First Nationwide waived its objection to their evidence, the Blanches rely on this Court's opinion in *Giese v. NCNB Texas Forney Banking Center*, 881 S.W.2d 776, 782 (Tex.App.-Dallas 1994, no writ). In *Giese*, we held that defects in the form of affidavits or attachments to an affidavit in support of a motion for summary judgment or response are generally waived unless objected to in the trial court. *Id.* at 782. The defects referred to in *Giese* concerned the form of the attempted authentication. *Id.* In this case, the Blanches made no attempt to authenticate the vast majority of their evidence, which was neither identified nor referenced in Andrew Blanche's affidavit.[2] A complete absence of authentication is a defect of substance that is not waived by a party failing to object and may be urged for the first time on appeal. *Cf. Kotzur v. Kelly*, 791 S.W.2d 254, 257 (Tex.App.-Corpus Christi 1990, no writ).

■■■■ Rule 193.7 of the Texas Rules of Civil Procedure is determinative of the Blanches' contention that their evidence was self-authenticating because it was produced during discovery. *See* TEX.R. CIV. P. 193.7. Under rule 193.7, "[a] party's production of a document in response to written discovery authenticates the document for use against that party in any pretrial proceeding or at trial" unless the party who produced the document files a timely objection to the document's authenticity. *Id.* The clear purpose of this rule is to alleviate the burden on a party receiving documents through discovery from proving the authenticity of those documents when they are used against the party who produced them. Rule 193.7 does not help the Blanches here because the documents attached to their summary judgment response were not produced to them by

---

**2.** Even if we were to consider the two documents attached to the affidavit by virtue of their being merely mentioned in the affidavit, neither document would add any relevant information to the testimony contained in the affidavit. *See Kotzur v. Kelly*, 791 S.W.2d 254, 257 (Tex.App.-Corpus Christi 1990, no writ).

First Nationwide, the party against whom the documents were used. Instead, the Blanches state that "most, if not all" of the documents at issue were produced *by them* to First Nationwide in response to discovery requests. A party cannot authenticate a document for use in its own favor by merely producing it in response to a discovery request.

The Blanches also argue their evidence was properly before the court pursuant to rule 166a(d). *See* Tex.R. Civ. P. 166a(d). Rule 166a(d) states that "[d]iscovery products not on file with the clerk may be used as summary judgment evidence if copies of the material, appendices containing the evidence, or a notice containing specific references to the discovery or specific references to other instruments, are filed and served on all parties together with a statement of intent to use the specified discovery as summary judgment proofs." *Id.* The Blanches' reliance on this rule is misplaced. Rule 166a(d) does not eliminate the need to authenticate documents used as summary judgment evidence simply because they were produced during discovery. Rule 166a(d) simply provides parties with different ways to submit their summary judgment proof for the record.

We recognize the Texas Supreme Court has held that rule 166a(d) "superseded" the authentication requirement for deposition excerpts used as summary judgment proof. *See McConathy v. McConathy*, 869 S.W.2d 341, 342 (Tex.1994). The rationale used by the court, however, was that certified copies of deposition transcripts are readily available to all the parties in a case and, therefore, the accuracy of the excerpts may be easily verified. *See id.* This logic does not apply to documents obtained in discovery, the originals of which may be available only to the party that produced the documents. *McConathy* has never been applied to discovery materials other than deposition excerpts, and we decline to do so now. We conclude the Blanches bore the burden of authenticating the documents they submitted as summary judgment proof.

As an alternative to their arguments that authentication was not necessary, the Blanches contend the trial court erred in denying them an opportunity to amend any defects in their proof. This argument is not supported by the summary judgment record, which contains neither a request for an opportunity to amend nor a denial by the trial court of any such request. The Blanches simply have not shown the trial court denied them an opportunity to cure the defects in their proof.

Because none of the documents attached to the Blanches' response to the motion for summary judgment was authenticated, the only evidence that was properly considered by the trial court was Andrew Blanche's affidavit.

### III.

■ Having resolved the Blanches' procedural issues, we turn to the merits of First Nationwide's motion. In its motion for a no-evidence summary judgment, First Nationwide challenged all of the causes of action alleged by the Blanches contending they had no evidence to support one or more of the necessary elements of each claim. Accordingly, we examine Andrew Blanche's affidavit to see if it contains more than a scintilla of probative evidence to raise a genuine issue of material fact with respect to the challenged elements. *See Stephan v. Baylor Med. Ctr. at Garland*, 20 S.W.3d 880, 891 (Tex.App.-Dallas 2000, no pet.).

The Blanches' claim of negligence was based on their assertion that First Nationwide negligently handled their account and reported incorrect information to credit bureaus, which negatively affected their

credit history. Specifically, the Blanches alleged First Nationwide wrongfully continued to hold them liable on the mortgage after a federal court had declared them not to be the owners of the subject property. The Blanches acknowledge they were in the process of appealing the court order during the time First Nationwide engaged in its allegedly wrongful conduct. They argue, however, that while the federal order was in effect, First Nationwide had a duty not to report them as delinquent on the debt.

■ Among the elements of negligence challenged by First Nationwide was the element of damages. To be entitled to damages for negligence, a party must plead and prove something more than mere economic harm. *Express One Int'l, Inc. v. Steinbeck,* 53 S.W.3d 895, 899 (Tex. App.-Dallas 2001, no pet.). In their original petition and in Andrew Blanche's affidavit, the Blanches specified the damages resulting from First Nationwide's alleged negligence as the denial of various loans and the payment of higher interest rates. These are economic damages not recoverable in a simple negligence action. *See id.*

■ The Blanches also state they suffered mental anguish and emotional distress. As the Texas Supreme Court has held, "without intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties, we permit recovery for mental anguish in only a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result." *City of Tyler v. Likes,* 962 S.W.2d 489, 496 (Tex.1997). The elements of intent, malice, and bodily injury were not raised by the Blanches' claim for negligent account handling. The relationship between a mortgagor and a mortgagee is not a "special relationship" under Texas law. *See Cole v. Hall,* 864

S.W.2d 563, 568 (Tex.App.-Dallas 1993, writ dism'd w.o.j.). Furthermore, the Blanches' summary judgment evidence did not reveal any injuries of such a shocking and disturbing nature that mental anguish was a highly foreseeable result. *See Temple–Inland Forest Prods. Corp. v. Carter,* 993 S.W.2d 88, 91 (Tex.1999). Because the Blanches failed to provide evidence of damages recoverable in a simple negligence action, the trial court properly granted summary judgment on that claim. *See Verinakis v. Med. Profiles, Inc.,* 987 S.W.2d 90, 96 (Tex.App.-Houston [14th Dist.] 1998, pet. denied).

■ The Blanches' claims for unfair debt collection practices were alleged both in general as well as under the Texas Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act. Andrew Blanche's affidavit contains no testimony about any efforts by First Nationwide to collect on the debt at issue other than the eventual foreclosure on the property. Nothing in the affidavit suggests that First Nationwide engaged in an unfair or prohibited debt collection practice. *See* TEX. FIN.CODE ANN. §§ 392.301–06 (Vernon 1998). Furthermore, the Blanches concede that First Nationwide was entitled to summary judgment on their claims under the federal act because First Nationwide was not a debt collector as defined by that act. First Nationwide was entitled, therefore, to summary judgment on these claims.

■ First Nationwide's motion for a no-evidence summary judgment challenged all the elements of the Blanches' cause of action for conversion. The "property" the Blanches allege First Nationwide converted was their escrow funds. The Blanches argue the federal court's order declaring they were not the owners of the real property entitled them to the return

of their escrow money. The necessary elements of the Blanches' claim for conversion were: (1) they owned, had legal possession of, or were entitled to possession of the escrow money; (2) First Nationwide assumed and exercised dominion and control over the money in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the Blanches' rights; (3) they made a demand for the money; and (4) First Nationwide refused to return the money. *See Ojeda v. Wal–Mart Stores, Inc.,* 956 S.W.2d 704, 707 (Tex. App.-San Antonio 1997, pet. denied).

Andrew Blanche's affidavit states he requested the return of their escrow funds. Nowhere in the affidavit, however, does he state that First Nationwide refused the request. Accordingly, the Blanches failed to present any evidence of an essential element of their cause of action. The trial court correctly granted summary judgment on the claim for conversion.

■■■■■ First Nationwide's challenge to the Blanches' claim for infliction of emotional distress focused on the lack of evidence of extreme and outrageous conduct and severe emotional distress. These are two of the four necessary elements of the cause of action. *See Toles v. Toles,* 45 S.W.3d 252, 259 (Tex.App.-Dallas 2001, pet. denied). "Severe emotional distress" means distress so severe that no reasonable person could be expected to endure it without undergoing unreasonable suffering. *See Escalante v. Koerner,* 28 S.W.3d 641, 646 (Tex.App.-Corpus Christi 2000, pet. denied). The plaintiff must show more than mere worry, anxiety, vexation, embarrassment, or anger. *Id.*

Andrew Blanche's affidavit stated he felt "intense embarrassment" as well as feeling "humiliated" and "frustrated" because he had to explain his bad credit reports to other creditors and his employer. These emotions do not rise, as a matter of law, to the level of being legally compensable injuries. *Cf. Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995). The Blanches did not provide any evidence of unreasonable suffering and consequently failed to raise a fact issue regarding severe emotional distress. Summary judgment was proper on the Blanches' infliction of emotional distress claim.

The Blanches' claim for invasion of privacy was based on First Nationwide's alleged publications of their "financial affairs." The only "publications" about which Andrew Blanche testified in his summary judgment affidavit are First Nationwide's alleged statements to credit bureaus and the inclusion of the Blanches' names on a foreclosure notice posted at the courthouse.

■■■■■ There are several forms of invasion of privacy. *See Cain v. Hearst Corp.,* 878 S.W.2d 577, 578 (Tex.1994). One form is the public disclosure of private facts. *See Doe v. Mobile Video Tapes, Inc.,* 43 S.W.3d 40, 48 (Tex.App.-Corpus Christi 2001, no pet. h.). A cause of action for public disclosure of private facts arises when a person gives publicity to matters concerning the plaintiff's personal life that would be highly offensive to a reasonable person of ordinary sensibilities and the matter publicized is not of legitimate concern to the public. *Id.* In this case, the Blanches presented no evidence that First Nationwide publicized "private facts" about them. The evidence merely shows the company reported the status of its financial transaction with the Blanches to credit bureaus, an act commonly performed by creditors to establish a debtor's credit history. Furthermore, Andrew Blanche's affidavit does not attempt to show that First Nationwide publicized any "fact" about the Blanches, private or otherwise. Rather, the affidavit states First Nationwide publicized a falsehood about

them to the credit bureaus and to the public through the foreclosure notice. Such an action would fall under the rubric of defamation, rather than invasion of privacy. *See Cain,* 878 S.W.2d at 580 (refusing to recognize a cause of action for false light invasion of privacy).

■■■■■ The second form of invasion of privacy raised by the Blanches is invasion of privacy by intrusion into their solitude. *See Doe,* 43 S.W.3d at 48. The three elements that must be established to sustain this cause of action are: (1) an intentional intrusion; (2) upon the seclusion, solitude or private affairs of another; (3) which would be highly offensive to a reasonable person. *Id.* The core of this claim is the offense of prying into the private domain of another, not publication of the results of such prying. *Clayton v. Richards,* 47 S.W.3d 149, 153 (Tex.App.-Texarkana 2001, pet. denied). The Blanches produced no summary judgment evidence that First Nationwide intruded or pried into their private affairs. All the information First Nationwide allegedly publicized about the Blanches came from its own records or public documents. Because the Blanches did not meet their burden to produce more than a scintilla of probative evidence supporting their invasion of privacy claim, the trial court's summary judgment on this cause of action was proper.

The final cause of action asserted by the Blanches was defamation. The Blanches contend that First Nationwide's statements made to various credit bureaus about their alleged delinquency in making mortgage payments were defamatory in the face of the federal court order holding them not liable for the mortgage. First Nationwide responds with the assertion that the Blanches' defamation cause of action is "preempted" by section 1681h(e) of the Federal Fair Credit Reporting Act.[3] Section 1681h(e) is a qualified immunity provision, which states in relevant part that "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency ... except as to false information furnished with malice or willful intent." 15 U.S.C.A § 1681h(e) (West 1998).[4] First Nationwide argues the Blanches produced no evidence of the statute's exception—malice or willful intent—that would allow them to go forward with their defamation claim.

■■■■■ An allegedly defamatory statement will be deemed to have been made with malice if it was made with knowledge that it was false or with reckless disregard of its falsity. *Yeager v. TRW, Inc.,* 984 F.Supp. 517, 523 (E.D.Tex.1997). The statement is considered "willful" if it was made knowingly and intentionally in conscious disregard of the rights of others. *Id.* The Blanches' summary judgment evidence showed they informed First Nationwide of the federal court order holding they were no longer the owners of the property in question and further holding they were no longer liable for the mortgage payments on the property. Despite knowledge of this order, First Nationwide reported to credit bureaus that the

---

3. We note that First Nationwide's motion for summary judgment specifically limits its preemption argument to section 1681h(e) of the Fair Credit Reporting Act and does not assert preemption under section 1681t(b)(1)(F) of the Act.

4. First Nationwide did not raise immunity under section 1681h(e) in response to the Blanches' claims for negligence and invasion of privacy.

Blanches were delinquent in paying the assumed mortgage based on their failure to make payments after the federal order was rendered. We conclude the Blanches' summary judgment evidence amounted to more than a scintilla and, as such, raised a fact issue about whether First Nationwide acted with malice or willful intent when it knowingly stated the Blanches were delinquent on their mortgage after it had knowledge that the federal court had ruled the Blanches no longer had any interest in the property.

■■■■ We further conclude the Blanches provided sufficient summary judgment evidence to raise fact issues with respect to the remaining elements of their defamation claim. For a private individual to maintain a defamation claim he must show the defendant published a defamatory statement about him with negligence regarding the truth of the statement. *See WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex.1998). A statement is defamatory if it tends to injure the subject's reputation, exposing him to public hatred, contempt, ridicule, or financial injury. *Marshall v. Mahaffey*, 974 S.W.2d 942, 949 (Tex.App.-Beaumont 1998, pet. denied). A statement is also defamatory if it tends to impeach the subject's honesty, integrity, or virtue. *Id.*

As discussed above, Andrew Blanche's affidavit raised a fact issue with respect to whether First Nationwide made false statements with either knowledge or reckless disregard of their falsity. For purposes of the summary judgment proceeding, the affidavit showed the statements made by First Nationwide were defamatory in that they injured the Blanches' credit history, preventing them from obtaining new credit at favorable rates. Furthermore, Andrew Blanche testified the false statements on his credit report impeached his honesty and integrity, forcing him to explain the alleged mortgage delinquency to his employer and other potential creditors. We conclude the Blanches met their burden to overcome a no-evidence summary judgment on their claim for defamation.

■■■ First Nationwide also moved for a traditional summary judgment on the Blanches' defamation claim. In its motion, the company argues that because the Blanches were appealing the federal court order holding them not liable for the mortgage on the property and never "obtained a final legal termination of their obligations under the Note and Deed of Trust," First Nationwide's actions could not be actionable as a matter of law. Neither in the trial court nor on appeal, however, does First Nationwide cite any law or provide any legal argument to support this proposition. On appeal, First Nationwide contends its actions were supported by Texas law necessitating that all persons claiming an interest in a property be made parties to its foreclosure. This argument does not address First Nationwide's potential liability for its reports to credit bureaus that the Blanches were delinquent in their mortgage payments. We conclude First Nationwide failed to show it was entitled to judgment in its favor as a matter of law on the Blanches' claim for defamation. The trial court erred in granting summary judgment on this claim.

Based on the foregoing, we affirm the trial court's summary judgment with respect to the Blanches' claims for negligence, wrongful debt collection practices, conversion, infliction of emotional distress, and invasion of privacy. We reverse the trial court's judgment with respect to the Blanches' claim for defamation and remand the cause for further proceedings.