

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00284-CV

**BEXAR COUNTY**,
Appellant

v.

Dominick **COLOMBRITO**,
Appellee

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CI-19443
Honorable Victor Hugo Negron Jr., Judge Presiding

Opinion by:  Rebecca Simmons, Justice

Sitting:  Sandee Bryan Marion, Justice
Rebecca Simmons, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  December 31, 2012

AFFIRMED

This is an interlocutory appeal from the trial court's denial of Bexar County's plea to the jurisdiction. Dominick Colombrito brought an inverse condemnation claim against Bexar County to recover for damages to his property caused by flooding, which he contends amounted to a taking. Colombrito also brought a nuisance claim, complaining that Bexar County unreasonably diverted the natural course of surface waters, which substantially interfered with the use and enjoyment of his land and caused extensive damages. He also alleged that Bexar County failed to meet the statutory requirements under section 254.006 of the Texas

Transportation Code and thereby waived its immunity from suit and for liability in his negligence and nuisance claims.

On appeal, Bexar County argues that the trial court erred in denying its plea to the jurisdiction because Colombrito failed to allege facts that support a valid takings claim and thus did not establish a waiver of Bexar County's governmental immunity. Bexar County further asserts that Chapter 254 of the Texas Transportation Code is inapplicable here and does not waive Bexar County's immunity. For reasons discussed below, we affirm the trial court's order.

## BACKGROUND

According to Colombrito, he has resided at his home on Gillette Road in San Antonio since 1990. He lived at this residence during the historic rains of 1998 and during the significant flooding in Bexar County in 2002. He asserts that during these incidents his property did not experience any flooding. Bexar County conducted maintenance work on Gillette road on several occasions after 2002. Colombrito claims that with each resurfacing of the road, especially since 2007, he noticed water from the roadway encroaching onto his land. He alleges he began complaining to Bexar County about the encroaching water as early as 2007. He insists that Bexar County did not address his complaints and continued surfacing and resurfacing the road. Colombrito alleges that his real property flooded in 2010. He sued Bexar County for inverse condemnation, negligence, gross negligence, and nuisance.[1] In his second amended petition, Colombrito added an allegation that Bexar County waived immunity pursuant to sections 254.005 and 254.006 of the Texas Transportation Code for failing to meet statutory requirements relating to drainage on public roads.

---

[1] Colombrito is no longer asserting governmental waiver of immunity under the Texas Tort Claims Act.

**STANDARD OF REVIEW**

"Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *accord Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). "[Governmental] immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction." *Miranda*, 133 S.W.3d at 225–26; *accord Mission Consol.*, 372 S.W.3d at 636.

"When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226. We review this question of law de novo. *Id.*

If the pleader has alleged sufficient jurisdictional facts, the governmental entity defendant may also challenge the *existence* of the jurisdictional facts. *See id.* at 227. We review the evidence like a traditional motion for summary judgment. *See id.* at 228; *see also Mission Consol.*, 372 S.W.3d at 635. We consider the competent summary judgment evidence, such as deposition transcripts and sworn affidavits. *See* TEX. R. CIV. P. 166a(d), (f); *McConathy v. McConathy*, 869 S.W.2d 341, 342 (Tex. 1994) (per curiam). "[W]e take as true all evidence favorable to the nonmovant [and] indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Miranda*, 133 S.W.3d at 228 (citation omitted); *accord Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). However, "pleadings are not competent [summary judgment] evidence, even if sworn or verified." *Laidlaw Waste Sys. (Dall.), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); *see Reyes v. Saenz*, 269 S.W.3d 675, 678 (Tex. App.—San Antonio 2008, no pet.).

As the plea to the jurisdiction movant, the governmental entity has the burden to show that there are no genuine issues of material fact, and it is entitled to judgment as a matter of law. *See Mission Consol.*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 227–28; *see also* TEX. R. CIV. P. 166a(c). The movant is entitled to summary judgment if it conclusively disproves at least one essential element of each of the plaintiff's claims. *Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999); *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 476–77 (Tex. 1995). However, if the evidence does not conclusively disprove the challenged elements, "then the trial court cannot grant the plea to the jurisdiction, and the fact issue[s] will be resolved by the fact[-]finder." *Miranda*, 133 S.W.3d at 227–28; *accord Univ. of Tex. Health Sci. Ctr. at San Antonio v. Stevens*, 330 S.W.3d 335, 338 (Tex. App.—San Antonio 2010, no pet.).

### INVERSE CONDEMNATION BY FLOODING

#### A. Establishing a Cause of Action

Article I, section 17 of the Texas Constitution, the "takings clause," provides a waiver of governmental immunity for claims arising from an unconstitutional taking of property without adequate compensation. *See* TEX. CONST. art. I, § 17. This clause mandates that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." *Id.* When a governmental entity intentionally takes private property for public use without adequately compensating the landowner, "the owner may recover damages for inverse condemnation." *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 554 (Tex. 2004).

To assert a cause of action for inverse condemnation, a claimant must plead (1) the governmental unit intentionally performed an act (2) that resulted in the taking, damaging, or destruction of the claimant's property (3) for public use. *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001); *accord Kirby Lake Dev., Ltd. v. Clear Lake City*

*Water Auth.*, 321 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2008), *aff'd*, 320 S.W.3d 829 (Tex. 2010).

Colombrito's pleadings allege sufficient jurisdictional facts to affirmatively demonstrate jurisdiction. *See Miranda*, 133 S.W.3d at 226. In its plea to the jurisdiction, Bexar County challenged the existence of jurisdictional facts. *See id.* at 227. As the movant, Bexar County has the burden to show there are no genuine issues of material fact, and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Mission Consol.*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 227–28.

## B. Intent

Bexar County challenges the intent element of Colombrito's inverse condemnation claim by contending it lacked knowledge that its actions in maintaining the road would cause harm to Colombrito's property or were substantially certain to do so.

The intent element of an inverse condemnation claim is satisfied by proof that the governmental body "(1) knows that a specific act is causing identifiable harm; or (2) knows that the specific property damage is substantially certain to result from an authorized government action—that is, that the damage is 'necessarily an incident to, or necessarily a consequential result of' the government's action." *See City of Dall. v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004). To give rise to liability for an intentional taking, it is not enough that the act itself was intentional, but it is not necessarily required that the governmental entity intended to cause the damage. *Id.* at 313–14.

Bexar County points to the single page of the deposition testimony of County public works employee, Tony Vasquez, it attached to its plea to the jurisdiction as sufficient evidence to establish it lacked the requisite intent for an inverse condemnation claim. Vasquez testified that there was no indication the road would flood based on the minor maintenance and, that in his

opinion, there was no way to expect the road would cause Colombrito's property to flood. He also testified that he had not received complaints about flooding from Colombrito's neighbors. The excerpt, however, does not explain who Tony Vasquez is or how he would have knowledge of the road and its propensity for flooding.

We conclude that this one page deposition excerpt—the only evidence Bexar County included in its plea to the jurisdiction—fails to conclusively disprove the element of intent. The brief dialogue contained therein fails to establish, *inter alia*, what Vasquez's position with Bexar County entailed, whether he had a responsibility to receive complaints of flooding or otherwise be aware of such flooding, or whether he had some specialized engineering or hydrological knowledge from which he could accurately predict the presence or absence of flooding. Because the record before us lacks this critical information, we cannot say that Bexar County has presented evidence conclusively disproving, as a matter of law, this element of Colombrito's inverse condemnation claim. *See Elliott-Williams Co.*, 9 S.W.3d at 803.

## C. Taking

Bexar County argues that Colombrito's complaint cannot constitute a compensable taking because a one-time flooding of a property is not a taking.

"A 'taking' by flooding is a specific type of taking." *Howard v. City of Kerrville*, 75 S.W.3d 112, 117 (Tex. App.—San Antonio 2002, pet. denied); *see Gragg*, 151 S.W.3d at 554. Establishing a taking by flooding generally requires more than a single flood event. *Gragg*, 151 S.W.3d at 555; *Howard*, 75 S.W.3d at 117.

> In the case of flood-water impacts, recurrence is a probative factor in determining the extent of the taking and whether it is necessarily incident to authorized government activity, and therefore substantially certain to occur. . . . The recurrence requirement assures that the government is not held liable for taking

property when a project's adverse impacts, and by implication its benefit to the public, are too temporal or speculative to warrant compensation.

*Gragg*, 151 S.W.3d at 555.

In his second amended petition, Colombrito alleged that Bexar County's actions in maintaining the road caused water to encroach on his property numerous times and ultimately caused the flooding of his home in June 2010. Bexar County points only to the assertion in Colombrito's petition that "Mr. Colombrito did not experience flooding at his house until June of 2010," and overlooks Colombrito's allegations of recurrent flooding on his property. Colombrito alleged he began noticing water from the roadway encroaching onto his property "[w]ith each resurfacing of the road, especially since 2007." Although Colombrito's *house* was not flooded until June 2010, his pleadings assert that his *property* experienced encroaching water as early as 2007. Thus, Colombrito has alleged sufficient facts that, if true, establish recurrent flooding of his property and flood damage to his home. Bexar County presented no evidence to rebut Colombrito's assertions of the repeated flooding of his property. Therefore, Bexar County has failed to conclusively disprove the element of taking. *See Elliott-Williams Co.*, 9 S.W.3d at 803.

## D. Public Use

Bexar County claims Colombrito has not established that Bexar County's use of the road was a "public use." Specifically, Bexar County contends that its actions in resurfacing the road were negligent, at most, and the damage caused by the surface maintenance activities was merely the accidental result of the government's act. Colombrito argues that if the pleadings give rise to a fact question regarding intent, he has alleged sufficient jurisdictional facts to show public use.

The public-use requirement distinguishes a negligence claim from an inverse condemnation claim. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 820–21 (Tex. 2009); *Jennings*, 142 S.W.3d at 314. "[A] compensable taking occurs 'only if property is damaged or

appropriated for or applied to public use.'" *Pollock*, 284 S.W.3d at 820 (quoting *Gragg*, 151 S.W.3d at 554–55). This is because "[a]n accidental destruction of property does not benefit the public." *Id.* "When damage is merely the accidental result of the government's act, there is no public benefit and the property cannot be said to be 'taken or damaged *for public use*.'" *Jennings*, 142 S.W.3d at 313 (quoting *Tex. Highway Dep't v. Weber*, 147 Tex. 628, 631, 219 S.W.2d 70, 71 (1949)). "Accidental" is defined as "[n]ot having occurred as a result of anyone's purposeful act." BLACK'S LAW DICTIONARY 16 (8th ed. 2004).

Colombrito's pleadings allege the roadway was resurfaced for the benefit of the public. Moreover, as discussed above, Bexar County failed to conclusively disprove the element of intent. If Bexar County knew its actions in maintaining the road would cause identifiable harm or that flooding to Colombrito's property was substantially certain to result, the damage would be the result of Bexar County's purposeful act and would therefore not be accidental. *See id.*; *Jennings*, 142 S.W.3d at 314. Because a fact issue exists with regard to Bexar County's intent in acting to maintain the road, there necessarily exists a fact issue as to whether the damage was merely the accidental result of Bexar County's act or was damaged for a public use. *See Jennings*, 142 S.W.3d at 314; *Pollock*, 284 S.W.3d at 820–21.

**E. Conclusion**

Having reviewed the relevant evidence de novo, we conclude Bexar County failed to conclusively disprove at least one element of Colombrito's inverse condemnation claim. *See Elliott-Williams Co.*, 9 S.W.3d at 803; *Doe*, 907 S.W.2d at 476–77.

NUISANCE

Colombrito also asserted a nuisance claim against Bexar County for allegedly unreasonably diverting the natural course of surface waters, which substantially interfered with Colombrito's use and enjoyment of his land and caused extensive damages. Bexar County

contends its governmental immunity has not been waived, therefore, as a matter of law, it cannot be liable for nuisance.

"A 'nuisance' is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities." *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 269 (Tex. 2004). "A [county] may be held liable for a nuisance that rises to the level of a constitutional taking." *Jennings*, 142 S.W.3d at 316. Because we have already concluded that fact issues remain as to Colombrito's inverse condemnation claim, in this case there necessarily exists a fact issue as to his nuisance claim. *Cf. id.* (concluding that the city was immune from nuisance a claim because it lacked the requisite intent to be held liable for inverse condemnation).

### TEXAS TRANSPORTATION CODE CHAPTER 254

In his pleadings, Colombrito alleged that section 254.006 of the Texas Transportation Code waived Bexar County's immunity to liability for nuisance. As stated in Colombrito's brief, his arguments with regard to Chapter 254 of the Transportation Code "directly relate[] to Colombrito's inverse takings claim as well as his nuisance claim." Because we have heretofore concluded that the trial court properly denied Bexar County's plea to the jurisdiction on the ground that Bexar County failed to conclusively disprove an essential element of Colombrito's nuisance and inverse condemnation claims, we need not address the applicability of the Transportation Code. *See* TEX. R. APP. P. 47.1; *Combs v. Entm't Publ'ns, Inc.*, 292 S.W.3d 712, 723 n.7 (Tex. App.—Austin 2009, no pet.).

### CONCLUSION

Bexar County failed to meet its burden to conclusively disprove at least one essential element of Colombrito's inverse condemnation and nuisance claims. *See Elliott-Williams Co.*, 9 S.W.3d at 803; *Doe*, 907 S.W.2d at 476–77. Therefore, although Colombrito asserts that the

Transportation Code may provide an additional basis for a waiver of immunity, we do not address its applicability. *See* TEX. R. APP. P. 47.1. Accordingly, we affirm the trial court's denial of Bexar County's plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 227–28; *Stevens*, 330 S.W.3d at 338.

Rebecca Simmons, Justice